IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO.  1:05cr256-LSC |
| | ) | (WO) |
| GREGORY JAMES SHIVER | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

The defendant, Gregory James Shiver ("Shiver"), is charged with knowingly possessing film, videotape, computer disk and other materials that contain images of child pornography that have been mailed, shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. § 2252A(a)(5)(B).

On July 31, 2006, Shiver filed a motion to suppress (doc. # 46) in which he asserts that any statement he made and all evidence seized as a result of those statements is due to be suppressed because the statements and evidence were obtained because a licensed counselor related confidential information to law enforcement agencies in violation of the psychotherapist/patient privilege.[1]

---

[1] In his motion to suppress (doc. # 46) and his counter-reply to the Government's response to his motion to suppress (doc. # 54), Shiver raises a number of issues relying on state and federal law. The court pretermits discussion of these other issues because at the evidentiary hearing, during a colloquy with the court, Shiver specifically defined the issue as "whether Ms. Suggs violated the privilege." (Evid. H'rg Tr. at 68).

| | |
|---|---|
| THE COURT: | Now, tell me.  A lot of your brief, it seems to me, is related to what happened with Mr. Bullard.  Why is that material?  I mean, the police were involved because the Altacare counselor, Ms.  Suggs, called them. |
| MR.  YARBOUGH: | Yes.  I believe – |
| THE COURT: | And – |

MR. YARBOURGH:    I understand.  And I believe, you know, that same argument as Bullard would be made to Lynn Suggs; but I agree with the Court to some extent. I think the brief originally focused on Brad Bullard.  And I read it yesterday afternoon.  I had another attorney in my office who read it yesterday afternoon, and said we would have to focus this more on Lynn Suggs.  And then we did that and filed before today's court date.

THE COURT:    Now, second question.

MR. YARBOUGH:    Yes, sir.

THE COURT:    Assuming for purposes of argument that the assessment was something to which a privilege would apply, she got a man sitting in her office saying that he's got a gun in his pocket, a gun in his car, and is threatening to commit suicide.  And she calls the police.  How is that a violation of any privilege?

MR. YARBOURGH:    Judge – and I referred to that a little bit in my brief.  There is no exception to that.  I mean, I don't believe that under the case law – and I don't specifically remember the case in my brief, but that there is no reporting on that.

THE COURT:    Well, first, let's talk about what law applies.  State law is immaterial under the Federal Rules of Evidence 501.  This is not a state law question.

MR. YARBOURGH:    Yes, sir.

THE COURT:    This is a federal common law issue.

MR. YARBOUGH:    Yes, sir.

THE COURT:    Now, to be frank, I'm not sure what exceptions exist; but by George, it seems to me that if any exception does exist, it's sure going to exist with respect to the psychologist or someone – or counselor – who's got someone sitting in their office saying, I've got a gun in my pocket, I'm going to kill myself.  Is she supposed to sit there and do nothing?

MR. YARBOUGH:    Judge, on – as far as the *Jaffee* case, it addresses that.

THE COURT:    It does?

MR. YARBOUGH:    *Jaffee* – yes, sir.  And it's a federal case.  And it says the *Jaffee* privilege is applicable only where a threat is serious when made and discloses it literally; the only means of averting a huge harm.  There's no such immediate threat or threaten (sic) to future harm implicated in our case. But it goes on to discuss that about the balancing components and those

2

type things.  But – and I understand your – your – what you're asking; but the problem with that is, is not only did she divulge about maybe he's going to kill himself, she divulged sexual abuse.  And as Ott, Corporal Ott, testified to, that was given them on the dispatch.  But she – not only did she dispose – or disclose the fact that, well, maybe he's going to kill himself, which the testimony being even from Corporal Ott, there was no gun and there was no gun in the car.  So at that point in time, the threat of a gun was no longer there.  But they also divulged the fact of, well, maybe he molested a child.  And, you know, at that point in time, we get into, you know, the statements and those type things.  You know, my argument is there – is no mandatory reporting on the threat based on *Jaffee*.  Also, there is no mandatory reporting on sex abuse cases.  I think the Government refers to the last case, which is a pre-*Jaffee* case.  And I think the *Jaffee* case in this particular case is what really controls.  I understand I got a little bit onto, you know, the state law and things like that.

.	.	.

THE COURT:	. . . If a defendant is sitting in the back of a car and nobody asked him any questions and he starts telling his life story, there's no Fourth Amendmetn violation.  There's no violation of *Miranda*.  It's questions –

MR.  YARBOUGH:	Yes, sir, I understand.

THE COURT:	– under custody –

MR.  YARBOUGH:	I understand.

THE COURT:	– without being mirandized.

MR.  YARBOUGH:	But we would never even be to that point if the privilege wasn't violated and –

THE COURT:	So the question is really whether Ms.  Suggs violated the privilege.

MR.  YARBOUGH:	That is the only issue.

THE COURT:	So if she didn't or if there's no privilege –

MR.  YARBOUGH:	She did.

THE COURT:	– to be violated, then everything else falls.

MR.  YARBOUGH:	I – I agree, Your Honor.

(Evid.  H'rg Tr.  at 65-68).

3

On October 11, 2006, the court held an evidentiary hearing and heard argument on the motion. Based on the evidence and argument of counsel, the court concludes that the motion to suppress is due to be denied.

## FACTS

The facts are largely undisputed. On December 27, 2004, Shiver called licensed professional counselor Brad Bullard seeking help for an emergent situation. When Bullard met Shiver, Shiver was "very distressed" and "very depressed." (Evid. H'rg Tr. at 9). Shiver indicated that he was having suicidal thoughts. (*Id*. at 6). During this counseling session, Bullard referred Shiver to a local psychiatric hospital, Altacare, for possible partial in-patient treatment.[2] When Bullard made the appointment for Shiver at Altacare, Bullard informed Altacare of his concerns regarding Shiver's suicidal and/or homicidal thoughts. (*Id*. at 11). Bullard also informed Altacare that Shiver had possibly committed child abuse.[3] (*Id*.)

Shiver reported to Altacare on December 29, 2004. When Shiver arrived at Altacare, Lynn Suggs, a licensed professional counselor and, at that time the director of Altacare, conducted Shiver's intake assessment. Suggs did the assessment because her speciality is sexual addiction and sexual abuse and Shiver's intake form indicated that the nature of his

---

[2] Lynn Suggs, the Director of Altacare described partial in-patient treatment as a "daytime program." (Evid. H'rg Tr. at 21). Patients come in at 8:00 a.m. and leave at 3:00 p.m., Monday through Friday. (*Id*.)

[3] Bullard subsequently reported Shiver to the Coffee County Department of Human Resources after Shiver had been arrested. (*Id*. at 17). Bullard did not, at any time, call the police to report Shiver's conduct to them. (*Id*. at 10 & 17-18).

problem was sexual addiction.  (*Id*. at 23-24).

During the course of his intake assessment, Shiver disclosed information to Suggs that led her to conclude that she needed to contact the police.  Not only had Shiver confessed to some criminal activity involving a child, he also told Suggs that he was suicidal, he had a gun in his pocket, and in his truck, and if the police came to see him, he would kill himself.  (*Id*. at 28 & 30).  Suggs asked another therapist to sit with Shiver and she contacted the police. She told them that Shiver had "confessed to some criminal activity involving the welfare of a child and that he had, in the process of doing that, told me that if police confronted him or came to see him he was going to – to kill himself and that he had a gun in his pocket and that he had a gun in his vehicle."(*Id*. at 31).   Suggs contacted the police because Shiver was suicidal.[4]   (*Id*. at 37 & 41).

As a result of Suggs' contact with the police, Corporal Carlton Ott of the Dothan Police Department was dispatched to Altacare to respond to the suicide threat.  (*Id*. at 43-44). Upon his arrival, Ott, Sergeant Nelms and Corporal Penn escorted Shiver from the facility to ascertain whether he was armed.  (*Id*. at 44).  After the officers determined that Shiver was not armed, Shiver indicated that he wanted to speak to law enforcement officers in Enterprise, Alabama because "he had made a mistake with a juvenile." (*Id*. at 47 & 52). Ott transported Shiver to the county line and transferred him to Chris Hurley, an investigator with the Enterprise Police Department.  (*Id*. at 55)

---

[4] Sometime thereafter Suggs also contacted the Houston County Department of Human Resources. (*Id.* at 31).

Shiver was transported to the Enterprise Police Department where he was informed of the allegations against him and advised of his *Miranda*[5] rights.[6]  (*Id*. at 55-56).  After he was advised of his rights, Shiver consented to an interview.  (*Id*. at 56).  During the interview, Shiver admitted to having inappropriate contact with a five year old female.  (*Id*. at 57).

On January 5, 2005, after Shiver was again advised of his *Miranda* rights, he consented to second interview.  (*Id*. at 58-59).  Shiver again confessed to inappropriate contact with a five year old female.  (*Id*. at 60).  At no time did Hurley speak with either Suggs or Bullard about Shiver.  (*Id*. at 61).   As a result of Shiver's statements, a federal search warrant was obtained for Shiver's home.  (*Id.* at 62).  On November 15, 2005, the defendant was charged in a one count indictment in this court.

### DISCUSSION

The defendant seeks suppression of all oral and written statements he made to the counselors as well as to any law enforcement officers.  He also seeks suppression of all evidence that was seized pursuant to the search warrant that was obtained using the confidential information provided by the counselors or to law enforcement officers.  Shiver argues that because Suggs revealed information to law enforcement officers in violation of the psychotherapist/patient privilege as established by *Jaffee v. Redmond*, 518 U.S. 1 (1996),

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] There is no allegation that the defendant was not properly advised of his Miranda rights or that the defendant's statements were not voluntary.

6

any statements made or evidence seized that relied on that information is due to be suppressed.

"[C]onfidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Jaffee*, 518 U.S. at 15.  It is undisputed that communications between Shiver and Suggs were confidential and made during the course of diagnosis.  Consequently, the sole issue before the court is whether any evidence obtained as a result of Suggs' disclosure of that confidential information is due to be suppressed as violative of psychotherapist/patient privilege.  The court concludes that it is not.

"We begin by noting that the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose."  *United States v. Suarez,* 820 F.2d 1158, 1160 (11th Cir. 1987).  *See also United States v. Chapman*, 866 F.2d 1326, 1333 (11th Cir. 1989) *(*"testimonial privileges must be strictly construed because they obstruct the search for the truth."); *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1344 (5th Cir. 1981) citing *United States v. Nixon*, 418 U.S. 683, 710 (1974) ("Privileges are strongly disfavored in federal practice.").[7]

While there exists a psychotherapist/patient privilege, it is not absolute and protects

---

[7]  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

only against *compelled* testimony.   Moreover, the privilege is an evidentiary one.   *See*

*generally United States v. Harper*, 450 F.2d 1032, 1045 (5th Cir. 1971).   The federal

testimonial privilege encompassed within FED. R. EVID. 501 "is not implicated by an

improper disclosure made outside of federal court proceedings." *United States v. Chase*, 340

F.3d 978, 985 (9th Cir. 2003).

> Furthermore, the evidentiary privilege, applicable to testimony offered against
> a party, is inapplicable to the situation where the disclosing party has merely
> provided information to a government agency.   *See cf. United States v.
> Lefkowitz*, 464 F.Supp. 227, 233 n. 3 (C.D. Ca. 1979), *affirm'd*, 618 F.3d 1313
> (9th Cir. 1980) (discussing the evidentiary rule of martial privilege, noting that
> such a privilege does not implicate the Fourth Amendment or other
> constitutional rights and explaining that providing information to a government
> agency does not equate with testifying in terms of an evidentiary privilege).
> Common sense dictates that an evidentiary privilege, intended to protect
> someone from court *compelled* disclosures of secrets or confidences, is not
> applicable to a voluntary, unsolicited disclosure to a law enforcement officer
> and then incorporated into an affidavit in support of a search warrant.

*United States v. Morgan*, 2001 WL 1402998, *4 (D. Me. Nov. 8, 2001) (No. CR. 01-45-BS).

Although the Eleventh Circuit has not discussed the psychotherapist/patient privilege

specifically, the court has held that "extrajudicial statements are not excludable on the basis

of spousal privilege." *Chapman*, 866 F.2d at 1333.   "*It is only the spouse's testimony in the

courtroom that is prohibited.*"   *Id*. (emphasis in original).

In this case, Suggs was not compelled to reveal any confidential communications to

law enforcement officers.   Suggs was not contacted by the law enforcement officers and

coerced into revealing confidential communications.   Based on her understanding that she

was a mandatory reporter under state law, Suggs voluntarily contacted law enforcement

8

officers and disclosed to them Shiver's confidential communications to her.  There is a marked difference between state confidentiality requirements and federal testimonial privileges.  *See United States v. Chase*, 340 F.3d 978 (9th Cir. 2003).  Whether Suggs was required by state law to disclose Shivers' communications to local law enforcement officers or not, the court concludes that the federal psychotherapist/patient privilege was not violated because Suggs was not compelled to testify against Shiver.

## CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **November 20, 2006.**[8]  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein*

---

[8]This case is set for trial on November 27, 2006.  Therefore, the court shortens the period for objections to afford the District Judge sufficient time to resolve any objections.

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of November, 2006.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

10